Q. This matter is Omland v. Planco. Mr. King, you asked for three minutes of rebuttal? A. Yes. Q. Very good. A. Thank you. Q. The first question I have is just a factual question. For the first period from 2000-2003 when your client claims that she should have been employed rather than contracted for, did she file an SSA? A. No, she did not. Q. Did you know why? A. No, I don't. Q. Should she not have done that? I mean, isn't that what's done normally? A. I know that that is a procedure that is available to her. I think the question that that raises is whether or not that is the exclusive remedy that's available to her. Whether or not it was and the reasons for her not filing that claim, I don't know. Q. Maybe not exclusive, but a prior exhaustion? A. A prior exhaustion if she were filing a suit under the Internal Revenue Code, which she's not. This is not a case that's brought under the Internal Revenue Code, but rather a claim that is brought under state code. Q. We understand that. You're under state law, but your opponents say that you're trying to subvert. You're doing an end run around a claim for a refund under 7442A. A. That's right. And by the way, that's a claim that was not made in the district court, but in any event... Q. When you say that, when you say that wasn't made in the district court, their assertion is obviously to the contrary and they cite to the appendix to a specific page and say, look, we laid out what the argument for explicit preemption is and then we expressly said that this is preemptive. We don't understand how they can take that position, particularly when in the court below Ms. Umland took the position that we had argued for exemption. What's your response to all that? A. Actually, if you go back and look at the briefing, we included those pages in our supplemental appendix to the reply briefing. The reason we did that is because they didn't raise 7422. They didn't argue express preemption in the district court. We pointedly raised that issue. We even credited the defendant for not having made the argument in the district court. And if you go back and look at, we are the ones who have cited the specific pages. The only reference you will find to it is on the final page of their memorandum in a parenthetical to a case citation where they mentioned 7422. There is no express preemption. They argued for conflict preemption along the lines of what Judge Sirica just referred to, arguing that the claim that we have brought here conflicts with the comprehensive federal tax scheme. And that argument simply doesn't hold any water, Your Honor. And the reason is because, first of all, if you look at 7422, what 7422 is designed to do is to make sure that tax collectors are included only, not its tax collectors. And that would include private tax collectors like employers who collect payroll taxes on taxes that are imposed on their employees. What happened here was... I want to stop you because I want you to, if I could, answer specifically this assertion. I'm reading from what you included in your reply briefing. Sure. They say on that supplemental appendix, page 7, federal law preempts state law in three instances, then quoting, the first, in enacting the federal law, Congress may explicitly define the extent to which it intends to preempt state law, unquote, from the Michigan Cantor's case. Then going down, in this case, it is beyond dispute that the Internal Revenue Code preempts state law causes of action for wrongfully collected taxes, citing Sigmund with the parenthetical, quote, the exclusive remedy for erroneous or illegal collection of taxes, et cetera, is an administrative claim. Now, your view is that that's not enough to say they preserve the argument that there's exclusive and explicit preemption? I don't think so. And I think if you read that in context with the rest of the paragraph that the defendant talks about the fact that the FICA is part of the Internal Revenue Code, which provides a multitude of administrative remedies, Section 7422 was never cited or quoted or discussed by the defendant below. We raised that issue in the district court below. And one other point, I'm not necessarily suggesting that you should hold that the defendant has waived that point. The only reason that I raise that is because they did not make that kind of an express argument. There's a huge difference between a brief in this court and what they filed here in the district court and the argument that they made in the district court. Because now they finally have raised express preemption as a front and center argument. That didn't happen in the district court. We raised that point. And the reason we raised that point is because 7422 doesn't expressly preempt. Okay, tell us why. Yes. First of all, if you look at 7422A, it provides in relevant part that no suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged of them erroneously or illegally assessed or collect. And then if you skip down a few lines or of any sum alleged to have been excessive or in any manner wrongfully collected until administrative tax refund procedures are exhausted. Now, subsection 7422F1 provides that a suit or proceeding referred to in subsection A may be maintained, but only against the As we briefed, 7422 was amended in 1966 and in its current form it was enacted to do away with tax refund suits against tax collection officers. Can you explain why the Ninth Circuit is wrong in taking the view that the language, any sum alleged to have been excessive or in any manner wrongfully collected is so broad and to explicitly preempt the kind of action you're bringing here? I don't think that it was wrong in the context of that case because in that case what the airlines did was collected a tax that was clearly imposed on airline passengers. There was no dispute about that. They were mistaken about whether that law would be renewed. Well, how is that different from here where your opponents say, look, if we were mistaken, in effect, they say, if we were mistaken, we were mistaken, but that doesn't make the tax any less than something done under colorable right and responsibility. Because we are talking about anything being collected as a tax under FICA. That is not what happened. First of all, before 2004, Planco didn't collect a penny from anybody. The taxes were being paid as self-employment taxes directly to the government. Planco didn't collect any money. They can't. You're alleging before 2004 that there was a misclassification, right? That's right. But doesn't the IRS administrative processes provide a remedy for that misclassification? It does provide a remedy. And the question then becomes, is that the exclusive remedy? And as we have pointed out in our brief and the Sixth Circuit recently held, I don't know if the court has seen our Rule 28J letter that we filed last week regarding the Mikulski case, but when Congress intends for a remedy to be an exclusive one, it knows how to say it, and it's done it several times explicitly in the code. But let's assume for the moment you're right, back to Judge Sirica's question, don't you have to at least exhaust the administrative processes that are provided for? You do if you bring it to... As to the misclassification. We'll get to the other claim next. The only statute that's been cited in this litigation is 7422. And under 7422, before you sue the government for a tax refund claim, you do have to exhaust your administrative remedies. But this is not a tax refund suit. Where do you find in the statute that this is limited to suits against the government? Yeah, in 7422F1. Well, I find that interesting because on the one hand, you said this language is an exclusive because Congress knows how to be explicit when it wants to be. But under F1, it's saying these suits are not to proceed against the United States or its officers, but it doesn't say anything about anybody else. You read that to mean it can only be against the United States and its officers. Not only do I read it that way, the Sixth Circuit recently read it that way, and Mikulski, the DuPont case that we cited, which discusses the legislative history of the statute and the legislative history itself, makes it clear that that was the intent of the 1966 amendment to the statute. Don't the Fifth Circuit and the Ninth Circuit and the Seventh Circuit, all of which have looked at this in the context of those airline taxes, viewed it differently? Talked about it in the context of private parties like Southwest? Oh, there's no question. I did not mean to suggest that 7422 would not bar a suit against a private party who collects taxes on behalf of the government. It does include private parties as well. I didn't mean to suggest that, and that's not our position in this case. Our position in this case is the defendant never act as an agent of the government collecting taxes on behalf of the government. Prior to 2004, it wasn't collecting anything from anybody, so it couldn't be a tax collection officer. After 2004, for the 2004 and 2005 period, what happened? If you go back and look at the allegations of the complaint, they were not taking a second deduction. They were properly withholding Ms. Umla's FICA taxes from her paycheck, but in addition to that, they were taking another deduction, and that's what was claimed as unlawful, because that was not in any way, and they have not claimed that they were acting as a tax collection agent in that case. We have alleged that they weren't, that they were simply proffering from their employees' paychecks. It was to And then, of course, that allegation is contested that they were retaining the money themselves. But with respect to the statements that were made by the various appellate courts, Judge Jordan mentioned dealing with the airline cases, what's your response to the argument that permitting these kinds of private suits, these so-called end runs around the tax refund cases, really would undermine the administrative scheme that Congress has set up here? If this were a tax refund case, if that's what occurred here, if, for instance, Ms. Umla... But if we read the statute the way that Judge Jordan pointed out, are we saying it's the equivalent of a tax refund case? Here's why I think you can't read it quite that broadly, and I don't think even the Ninth Circuit intended for it to be read that broadly. I think you have to keep in mind the context in which that case was decided. If you read the language of 7422A, it's very broad. It says, no suit or proceeding shall be maintained in any court for the recovery of, and then if you skip on down, any sum alleged to have been excessive or in any manner wrongfully collected. If you read that language out of context, in isolation, that goes way beyond tax claims. That's very broad language, and I think you have to read it in the context of tax refund suits, which this is not, and that's why we're outside the scope of 7422A. Michael, put five more minutes on that. On the second claim, 2004-2005, why don't you address that one? The problem with that, and the reason that Planko has no credible claim that it was acting as a tax collector, and I'd like to remind the court that Planko's never made any claims of that sort, and we are on a 12-6 motion where the plaintiff's claims or allegations are to be taken as true, but the reason that with respect to 2004-2005 it doesn't have a leg to stand on is because there's clearly a separate amount that Planko was properly withholding as FICA taxes, which was the tax that was imposed on Carrie Oland. This separate amount could have been an amount they used to pay for entertaining clients of the company. They could have done anything. The only connection with that deduction and the Internal Revenue Code is that they happened to take out exactly the same amount of Planko's own tax liability, and that's something they stopped doing in mid-2005. I thought your argument for the second one was that if she's an employee, yes, they should take out her FICA up to whatever the amount is, $90,000 or whatever that she makes, and then for themselves, however, they have to take out the 7.65%, and instead they took it out of her. Exactly. That's exactly right. They were taking it out of her paycheck. They were taking two amounts out of her paycheck, the amount that they should have, the FICA tax that was imposed on her, and another thing that was not a tax in any way even purported to be imposed on Carrie Oland, and that's why that part of this case is not a tax refund suit. What did they say was the reason that that was being taken out? Well, we have yet to see that because we are not at that stage of the litigation. No position was ever taken? I am unaware of any position being taken by Planko in these proceedings as to why they were doing that. I think the reality is if you look at the allegations of a complaint and if those are taken as true, they were just taking an amount that they didn't want to pay out of their employee paychecks. First they forced them to pay it by classifying them as an independent contractor. Well, that raises the Twombly issue, which you folks submitted letters on, and if we read your complaint, ignoring for a minute Federal Rule Civil Procedure 9 and just asking ourselves what does Twombly do here? Does it require you to say more than was required in the way of allegations before that case? How is it that you can assert that they were just dead on pilfering when there's no more meat to the allegation than that? Or at least I would appreciate it if you point me to where in the complaint you have cited anything more than a general allegation of their bad faith. Well, I don't think that Twombly affects the standard here for one thing. The defendant didn't challenge the sufficiency of the factual pleadings in the case. And even after Twombly, Twombly makes very clear that even if a district judge doesn't believe the factual allegations of a complaint, he still has to take them as true. The plausibility standard goes to whether or not he's alleged enough facts that he's stated a claim for relief. A plausible claim for relief, not plausible facts. The facts still have to be taken as true. And it sounds to me like the question you're asking is whether or not you believe the allegation that Carrie Elmore has made. No, what I'm trying to ask is what you think. The letter you gave indicated that you said the facts are undisputed and so we've made out a claim here. And that just didn't advance the ball much for me because I thought, well, that's always the case in a 12b-6. I mean, by definition, you're only dealing with an issue of law and not a fact in a 12b-6. But I take your point. I think I understand what you're saying, which is if you've stated a You would agree that Ms. Zunlan has a remedy for both the pre-2004 and post-2004 claims? I don't. I'm sorry. I don't. For 2004 and 2005, the defendant hasn't even made an argument that she had a claim. At the beginning of January of 2004, she was classified as an employee, so she I'm talking about a remedy against the government, a remedy to be made whole. We were right. And no, she doesn't. And the defendant hasn't made an argument that she does. She was properly classified as an employee beginning in January of 2004. Her FICA taxes were being withheld from her paycheck. She doesn't have a claim for that. The defendant presumably paid its share of FICA beginning in 2004. She doesn't have a claim for that. I thought there was an administrative remedy that would permit an ALJ to look and see whether a person was misclassified. None that I'm aware of, and none that the defendant has argued upon. Good. Any other questions? I don't know if I have any time left to reserve for rebuttal, but... Oh, no. You have rebuttal. Okay. Thank you, Your Honor. You were on our time. Mr. Bergdahl? Good morning. Good morning, Your Honors. My name is Jim Boudreaux, a law firm of Littler Mendelsohn, and I represent the defendant at Pelley Pine Cove Financial Services. And we'll give you 20 minutes to... Thank you, Your Honor. This is a lawsuit that really is a federally-based claim, which courts have rather soundly rejected. That is, that there's no private right of action for FICA contributions, excess, wrongfully And it's a claim in search of a viable state law action. Could you please raise the microphone again? Thank you. Let me ask you on the... Is your first argument that there is no subject matter jurisdiction or... Because you filed a 12B6 claim, right? That's correct. And the court, however, granted 12B1? Correct. And I don't know if that was a typographical error or merely an oversight, you know, an intentional act. Do you have subject matter jurisdiction or do you dispute that? I do not dispute subject matter jurisdiction grounds because it's diversity jurisdiction either way, whether it's single or under CAFA. Because there seemed to be a bit of a conflict in your brief on page 1 and then page 5, footnote 4. So you're saying we do have subject matter jurisdiction? Yeah. Can I ask you to address the last argument that Mr. King made, which is there's just not a remedy here against the federal government. You've never argued there is, so you would shove them into a system where they really can't get anything. Well, I... On the... This is on 0405. 0405, correct. There is always a remedy, regardless of what time we're talking about. On the classification side, the 0304 period, there is the opportunity for an employee or independent contractor that's misclassified to file a claim, an SSA form, say that I'm an independent contractor, and then the administration will make a determination as to whether they were properly classified or not. Okay, so 0405. Right. And now for the later claim, you can always petition the Social Security Administration for an order to clarify the tax, basically where the money is going, and that there's a tax account, and that the federal government can then render a ruling that if the excess FICA contributions were in fact paid as alleged, those monies could be credited back to the employee and then penalties imposed on the employer for failure to pay FICA. There's many remedies, and they're laid out in the briefs that can be pursued to attack all of these claims. And I think it's important... But if you're supposed to take out 15, or somehow 15.3, half of it, if you're an employee, is by the employer, and half of it's paid up to a certain amount of wages earned during the course of the year by the employee, and the employer takes out from the employee monies that the employer should have taken out for itself, you're saying that there's something that they can do under federal law? They can file a claim with the Social Security Administration for overpayment of FICA taxes, saying that those monies were paid by them. Who's going to give them the time value of money? The time value of money? Well, the employer ultimately would, because the federal government can assess the penalty, which would include not only penalties, but interest. They'll assess a penalty to... They have the authority to do that, yes. And employers are routinely penalized for not paying. Do the employers turn the time value of money by way of that penalty over to the employee? The employer necessarily wouldn't do it, but the federal government can do it, much like a tax refund that's delayed gets interest paid back. Are you sure about that? That's impromptu, but yes. There's a federal mechanism under the IRS for Ms. O'Malley to get back the $7.65 that was erroneously taken out of her pay. Correct. Now, and I think it's important to understand that it's important that the federal government be the agency that resolves these claims. Is there any place in your briefing where you say, hey, this is laid out in the briefing? Where exactly in the briefing have you explained that to us? In the last part of the appellate brief, there is a whole litany of remedies that an employee can pursue for the various things alleged. Well, you've got a colleague at the council table. Maybe you're not wanting to take your time right now, but I'd be interested in a cite to the pages. Pages 21 and 22? Yes. It mentions the SSA form. The IRS has the ability to pursue employers for underpaying FICA taxes by properly classifying employees as independent contractors. An administrative claim for a refund of self-employment taxes. You can sue the government for a refund of taxes if the refund claim is denied. And that you can go to the SSA to correct records, errors, or omissions in wage records. And is that the portion under which you're saying that the time value of money issue is taken up? Yeah, that through those administrative schemes that an employee can be remedied for anything that is misallocated. Because that's really what this is. It's a misallocation. And if you look at it from the independent contractor side, it becomes very clear. An independent contractor who is misclassified has paid FICA. And they've also played with a seat of the equivalent of the FUTA tax, the employer excise tax. If this claim were allowed to go and the FUTA tax or simply that amount was simply paid over to the employee, the employee would actually get a windfall. And that's because when they pay their taxes, they deducted the FICA. They get credit for half. It's a neutralization scheme. So that the IRS needs to be the one that administers these payments to make sure that when the FICA payments are properly treated as FUTA payments, that the employee ultimately ends up getting the tax, you know, that that becomes tax equalized. When you look at 21 and 22 of your briefs, you're talking about there's two kinds of taxes here, right? There's an employee FICA tax. Correct. Which is 3111. Correct. There's an employer FICA assessment, which is 3121. Right, FUTA. And isn't what you're talking about is the overpayment of the employee FICA tax and you can seek a refund? Yeah, the employee. But what we're talking about here is the assessment against the employee of what the employer should have paid under 3121. Well, so where's the remedy under the... Because the account that is funding the FICA and FUTA account, the money is coming from the employee, so it's an overpayment of FICA. And if you look at paragraph 84 of the plaintiff's complaint, the brief morphs this issue a bit. The appellant's brief morphs this issue a bit. The paragraph 84 of the complaint... I think they're arguing that you morphed the issue. I understand. And after January 1, 2004, Planko reached his contract with plaintiffs and with class members by deducting Planko's share of the FICA tax from plaintiffs and class members' paychecks. So this allegation of pilfering, if you will, is not really there. What they're saying is we assessed double the FICA tax. Yeah, I mean, I get the sense we're getting into semantic gaming here. You say, I guess it's some kind of a clerical error. They say, no, you knew what you were doing. You ripped us off. You didn't want to pay the tax. You're half the tax. We took all of it out of our hides, and that's what our claim is. And I guess the question that I've got and that I hear Judge Ambrose asking as well is, where is a federal remedy in the administrative system for an employee who has, assuming we take at face value what they say, and that, I'm not saying it's so, just saying it for the sake of argument, that Planco is populated with bad people at the top who are just stealing from the employees so they wouldn't have to pay the tax on behalf of the company. Where's the remedy for an employee in a circumstance like that? An administrative claim for a refund of self-employment tax is overpaid. And I think their assertion would be, I'll let Mr. King speak for himself, that there wasn't an overpayment, that the right amount of FICA tax was paid. It's just that half the employer should have paid came out of the employees. So the government would say, no, there's not been an overpayment. You got a problem with your employer? Take it up with your employer. But the government would say that you don't have a 3111 problem. You have a claim against your employer for taking out of your hide what should have been paid by them. Well, I don't think that's, in fact, what's true because the employee can go in and demonstrate through a paycheck because the deduction is going to be on the paycheck, FICA, and it's going to be $14,000. Do you have any authority at all for the proposition that the federal government would want to step in between an employer and employee and say, oh yeah, it does look like you made them pay more than their fair share here. So we got what we were entitled to. We got the 100% of the FICA allotment that we wanted to get, but you made them pay too much, and so we're going to take care of straightening this out. Any case authority at all or administrative regulations that put the government in that box ever? I'm standing here off the top of my head. I don't have anything exactly on point like that, but I'd say it's the exact same situation that happens in a misclassification case. When an SSA form is filed, the federal government intervenes and says, were they properly classified? But she is properly classified as an employee. At that point. At this time. So this is an entirely different animal. But if you file the administrative claim for a refund, the agency is going to have to go through the same administrative process and discern was there an overpayment by the employee. But it is fair to say, isn't it, that you're not aware of any case where you would have cited it to us or any administrative regulation where you would have cited it to us or any employee has ever gone to the United States government and had the government intervene to straighten out the percentage paid on FICOM between the employer and the employee? I'm not aware of any, but I will say also that it's not really been an issue that's been at the forefront of this in the sense that there hasn't been as much detailed analysis. I'd like to go back and look at it, frankly, Your Honor, because there hasn't been that level of detailed analysis into this issue. But you've had a chance to look at this. I mean, you've had the chance before here and now here. And I don't see anything. When I look at pages 21 and 22, which you're talking about, they don't cover the situation that Judge Jordan is talking about. And that's the issue that I'd like to go back and look at because, again, nobody has really come forward, neither at the district court level nor here, and made this precise argument. I think that there is an administrative process. And I understand you think otherwise. Well, you can't understand anything from us based on questions, sir. We're just asking questions, all right? On the Mikulski case that your opponents put in with the 28-J letter just late last week, is there anything you want to say in response to that, particularly the Sixth Circuit's assertion that 7422 does not preempt an action between private parties? Well, the Mikulski case, frankly, I think is an opposite here, other than to the extent it talks about the artful pleading doctrine, frankly. I mean, the Mikulski case isn't a tax payment case. That was a case in which the employer, or the company, it's a securities case, was alleged to have distributed fraudulent dividend payment forms on which taxes were paid, and therefore the taxes were in excess. It is not a situation where the tax collector, your employer, is being sued. Well, let me ask you to respond to this language from the en banc decision of the Sixth Circuit. It says, this is on page 8 of the slip opinion, under the plaintiff's theory, the IRS was an innocent third party. That's the case under their theory here, right? Correct. Who, like the plaintiffs themselves, merely relied on, in this case, they cite what it is, 1099 DIVs issued by the defendant. And, again, that's analogous to what's happening here, because they say the IRS just relied on whatever it was that Planko was doing, as did the plaintiffs during the period in question. Then it goes down and says, we conclude that 26 U.S.C. 7422 does not preempt the present case. That is where the plaintiff, in this instance, is going directly after the employer. Now, you say that's in a posit. Correct. That's looking analogous. Help me understand why it's not. Well, I think there's language in the opinion, and I can't cite the exact page because I'm working off notes, but it's expansive application of the Sigmund v. Southwest Airlines case does not extend to the present case because Sinterior did not collect or withhold any taxes. Sinterior was not acting as a collection agent for or on behalf of the IRS. All they did was send out a 1099 DIV form. Here, Planko is acting as a collection agent. It is taking money and sending it to the federal government. No, not for the second 7.65 for the 0405 period. Well, in other words, the reason, obviously, you're talking about classification. The reason you would normally want to have someone classified as an independent contractor is so you don't have to pay the 7.65, right? Correct. Well, once they become an employee, you're responsible for it. That's correct. That's your obligation to the government. You can't take it from someone else. When you do take it from someone else, why does the government have to come in as a middle person and sort it out? Why can't that person from whom you took it directly sue you directly? Because there are remedies that can be pursued to remedy that situation. By analogy, you're arguing that there may be remedies because of the misclassification scheme. But if this is not a misclassification, in fact, this person is now an employee, considered as such, how does that particular administrative remedy apply to this situation? It is an overpayment. If it came out of the employee's check, the employee is paying it. It is a FICA payment. It is an overpayment. And there is nothing like overpayment to the government because the government is entitled to 15.3% and gets it. In fact, they're just happy. Right. Then the issue becomes allocation of accounts. To whose account is the payment credited? The employee's or the employer's? If the employer is deemed not to have funded the account properly, it will be penalized. But you don't, again, just to make sure, there is no case, there is no administrative ruling that you know that says that. You're saying this is a case of complete first impression. Well, only in the sense that the Berger case out of the Northern District, Illinois, rejected this exact theory as to misclassification. Well, as to a common law claim for restitution as well. Let's see, I have more time. You were going to tell us why permitting suits like this would subvert the administrative scheme. Yes, there are administrative remedies, whether the misclassification case, whether the overpayment, credit your account, whatever they may be, they are laid out in the briefs we've been talking about. All of those remedies are there for a reason. If we allow an end to a run around these federal schemes, I mean, there is no private right of action under FICA. That's why these are brought under state law. If we allow it, what we're going to see are the floodgates open. Because frankly, anybody who thinks that they have been paid or that too much has been withheld from their paycheck, that the employer did the wrong exemptions and withheld too much, made a mistake in that account, nothing is going to prevent an employee from simply characterizing that claim as a breach of contract. If party A takes from party B what party A itself should have paid rather than taking from party B, isn't party A entitled to a remedy? Well, yes, they are entitled to a remedy. I'm saying the party pursued way too much. Isn't that person entitled to a remedy? Right, and our assertion is that there is one. And I think that's what the Berger court found. I think that's what the McDonald court found. What the Berger court found was in the classification scheme that it had language about comprehensive federal scheme, which one could argue perhaps is a preemption. But that's misclassification. Here, you're properly classified, you know, 405. Right. And again, going back to you can petition for the refund, but you can petition to have your accounts allocated. Correct. Why should the government give you necessarily, why should they give you a refund? Don't, wouldn't the government say, go to the party that misappropriated it from you and get it from them? Well, no, because then ultimately you're going to have an underfunding in the federal government somewhere. The federal government wants to know these things. The point being that the government's been paid what it's, it's been funded correctly, 15.3%. The person that it came from is the employee, when in fact it should have been split between the employer and employee. So if the employer takes too much from the employee, shouldn't the employee have the ability to get back from the employer what the employee paid too much of? And it's that very issue, Your Honor, when you're dealing with taxes that's going to, federal taxes they should say, that's going to open the floodgates. Because I could make that same argument, just claiming that you paid, I could file a complaint and raise the allegation that you paid too much in FICA taxes. And I as an employer have been dragged into court, forced to justify a situation that the IRS knows the answer to. It's hard to see that there would be bad consequences when you're saying that this situation has come up so infrequently that you can't even find anything directly on point. But the reason it has come up so infrequently, Your Honor, I would submit, is because there is a comprehensive remedial scheme. There is no reason for these lawsuits. I'll end up with Judge Jordan's question. You're doing it by analogy on things you've noted on pages 21 and 22 of your brief, but we're not sure that those necessarily apply. And you're saying that they aren't necessarily directly on point. And I think that I go to the equitable argument on restitution that other courts have found, Your Honor. The fact that there's not a remedy for absolutely everything that happens doesn't mean we need to imply a new one. In sum, in closing, Your Honor, the court should affirm the district court's dismissal. It should not countenance the use of artful pleading, the sole goal of which is to avoid, frankly, federal decisions, and the fact that FICA doesn't provide a private way of action. And I think that the Internal Revenue Code's own remedial, substantive remedial provisions address all of these concerns far better than state common law causes of action. Indeed, recognizing a viable state common law cause of action in this instance will likely, as I said before, open the floodgates. And I don't think that's a result we want, and therefore, Your Honor, the district court got it right. Thank you very much, Mr. Boudreaux. Thank you. Mr. King? Mr. King, why isn't Mikulski a different case? Why aren't the facts different there? Mikulski is a different case. They weren't acting as collectors. They were not acting as tax collectors in that case. They were not acting as a tax collector. But in that sense, it's not different. The plaintiff wasn't here either. The focus was on dividends. I mean, that they erroneously or fraudulently. The relevance of Mikulski is that the Sixth Circuit there held that when a private party causes another private party, in that case, to overpay taxes, which we don't even have here, that that private dispute is not one that's preempted by Section 7422. Yeah, but the focus of that was not a scheme like FICA. No, it wasn't. It was a different situation. But the point about that is, first of all, allowing this suit is not going to open up the floodgates. The facts here that we've alleged are pretty outrageous and pretty unique, as Judge Jordan has commented on. What we have alleged is what they did is a pretty bad thing. They stole from their employees. Now, that's an unusual fact circumstance. That's what we have alleged. That's what we intend to prove. This is not one of many cases where people are going to come in when there's been an overpayment or wrongful election. The law is the same. You don't have to prove that they stole. If they were wrongfully withheld, it could be any number of reasons. Assuming you have a cause of action, you can still win. The law doesn't talk about whether they stole or didn't steal. No, but I think it does, and the airline cases do talk about whether or not, in those cases, the airline purported to collect a tax on behalf of the government. That's not what happened here. They weren't purporting to collect a tax that was imposed on Carrie Umbland. They were taking money from her to pay their own taxes. That's what makes this case different. That's what takes it out of the airline case situation. That's what takes it outside of 7422, because Planko wasn't purporting to act as a tax collector. So the rule would be that this action can go forward only if there was bad faith or theft, but not in any other case. I think that's probably true. That's the way you would write the opinion. If an employer wrongfully collects and overcollects a FICA tax because he made a mistake in the calculation, that's clearly covered by 7422 because he did purport, even though he mistakenly overcollected, he did purport to collect a tax, which he then remitted on behalf of the employee to the government. We're not talking about a case like that. We're talking about a case where they're stealing from employees' paychecks. And prior to 2004, the situation where there might be some remedy, that Carrie Umbland could have succeeded, you asked me earlier about whether or not she needed to exhaust. Well, the only statute that's discussed anywhere in the briefing that talks about exhaustion is 7422A. And it requires exhaustion before you sue the government for a tax refund. And that's not what's going on here either. The dispute prior to 2004 is a dispute about whether or not she was an independent contractor or an employee, and there's nothing uniquely federal about that dispute, as the court is undoubtedly aware. That's a staple of state litigation, state law litigation. It comes up in a variety of cases where respondeat superior issues are at play, in workers' compensation cases. Michael, we'll give you two more minutes to finish your rebuttal. Thank you, Your Honor. Can I ask one more question, please? You've said that you don't think Twombly's got an effect here, but I want to ask you this in the context of what you've just said to Chief Judge Sirica. Twombly, if I've read it right, seems to say that, at least in the antitrust context, we won't have vague allegations about conduct because otherwise the interim effect of a big antitrust suit could cause people to settle up when they shouldn't. Now, taking that, if I've read it right, and laying that template against these facts, you've got a class action suit. You've got broad allegations of bad faith. You say it's those broad allegations of bad faith that take you out of 7422 and allow you to pursue this. Why shouldn't Twombly's plausibility requirement, that is that the behavior is just as consistent with unlawful conduct, be applied in looking at your case and asking ourselves, is it just as plausible that on the facts alleged, the specificity of which I've already made a comment on, is that it's just as plausible this is a clerical error we're dealing with in 04 and 05 and a misclassification pre-04. Why wouldn't that Twombly spin on the pleading requirement kick in for this kind of case? Well, first of all, I think because the defendant has not challenged the sufficiency of our pleadings, the factual allegations. But even if they have, I think we should be permitted the opportunity, if that were the problem with our allegations, to make them more pointed because that is exactly what our allegation here is. In Twombly, the case was whether or not, obviously under the antitrust law, a fact finder is not permitted to infer that there was an agreement between alleged co-conspirators simply because of parallel conduct. There has to be something more, factually more. And what Twombly holds is not only do you have to prove that something factually more, you have to plead it as well. I don't know what more we could have pled here because the factual sufficiency of our allegations has never been challenged. And I think it is pretty clear from the allegations we have made that we're accusing the defendant of having acted in bad faith. Would that mean that you would be under Rule 9, having to plead fraud with specificity? No, because I don't think we've pled anything subject to Rule 9 here. And that's certainly an issue that hasn't been raised before. You're not alleging fraud in any way? I suppose one could spin these into allegations of fraud, but we haven't claimed that the defendant is guilty of defrauding us or defrauding the government. That puzzles me because that's exactly what I understood you to be alleging, that they faked you and the government out, and when you found out, you were outraged and brought this suit because they were taking money from you fraudulently. What they did prior to 2004 was they required their employees to sign a contract saying they were an independent contractor, and of course that's not binding. I mean, there is a determination beyond what an employer can impose on an employee. We've not said that anyone was defrauded. Now, whether or not any given employee, like Carrie Elman, understood that she really wasn't an independent contractor. In your earlier argument, you said that, quite frankly, they stole from us. Yes. What's the difference between their stealing and defrauding you? Well, a big one. It's one thing if your employer is snookering you into something. It's another thing if they're arm-twisting you. What should Ms. Elman have done in 2004 and 2005? She couldn't go to the government and file an S.S.A. and say, fine, but I'm an employee, because that's how they were classifying her in 2004 and 2005. She couldn't ask for a refund of any tax she paid because she was an employee. Even though she was an employee, they were still classifying her as an independent contractor? No, no, no. In 2004, beginning January 1, 2004, they classified her as an employee. Right. So I thought maybe you mis-smoked or I misunderstood. I probably mis-smoked. Prior to 2004, you're saying that they played a game, and the game was to have somebody deemed to be an independent contractor when they should have been an employee. That's right. When they sort of figured out that there was a major problem with this, they then made her an employee, but then took double from her what they should have. That's right. And then in mid-2005, they stopped doing that, and since then, they've done things right, the way everybody else in the industry does it. That is the factual allegation. That's good. Those are the factual allegations. Interesting. Okay. Thank you very much, Mr. King. Thank you, Your Honor. The argument was excellent on both sides. We would like a transcript made of the tape, and for both sides to share in the costs, and if you would check with the clerk's office as you leave, they'll tell you how to do that. Okay. Also, we focused on some things that we're not focused on in the briefs, at least to the same degree that we've seen here in the oral argument. We'd like you – in particular, there's some confusion as to what administrative remedies may or may not be available on both the pre-2004, but mainly the post-2004 situation, and if you could give us letter briefs within 10 days from today that would outline whatever there is or whatever there isn't, whatever argument you want to make, that would be perfectly fine. I don't know whether – As to the existence of remedies? As to the existence of remedies. For the 2004-2005 briefs? Well, that seems to be the focus. Okay. If you want to say something about the pre-2004 as well, that's fine. Do you want anything further on the pleading? No, thank you. Okay, good. In any event, we'll take the case under advisement. We thank counsel for an excellent job. Thank you very much. Thank you.